UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOTC UNITED, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE ASIA PACIFIC PTE. LTD.,<br><br>    Defendant. | Case No. 22-cv-04990-JSC<br><br>**ORDER RE: PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 58 |

Petitioners, DotC United, Inc., and Avazu Inc., challenge an order from an international arbitration panel finding it had jurisdiction over Petitioners, who were non-signatories to the underlying arbitration agreement. Petitioners move under the Federal Arbitration Act (FAA) to vacate the arbitration panel's order finding jurisdiction and Respondent Google Asia cross-moves to confirm the order. (Dkt. Nos. 6, 32.[1]) Following a hearing on the cross-petitions, the parties were ordered to submit supplemental briefing. (Dkt. Nos. 49, 55.) A further hearing on the cross-petitions is scheduled for April 19, 2023. In the meantime, Plaintiffs moved for a preliminary injunction to enjoin the underlying arbitration proceedings as to them. (Dkt. No. 58.) Having considered the parties' briefs and having had the benefit of oral argument on March 30, 2023, the Court GRANTS the motion. Petitioners have demonstrated a likelihood of success on the merits, or at a minimum that serious legal issues are raised, and they face irreparable injury if the arbitration proceeds as to them pending this Court's review of the arbitration panel's jurisdiction award.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

**BACKGROUND**

The underlying dispute arises out of a Google AdWords Master Services Agreement for advertising services dated April 23, 2016 between non-party Jupiter and Respondent Google Asia. (Dkt. No. 1 at ¶ 16.) The Agreement provides it "will be governed by the Google Asia Pacific Pte. Ltd. Advertising Program Terms ('Terms and Conditions') available at the following URL during the date(s) that the Ads under this Service Agreement are running." (*Id*. at ¶ 18.) Jupiter executed the Agreement through a "click-through" process. (*Id*. at ¶ 20.) In 2017, Google Asia modified its Advertising Program Terms to provide they apply to "any claims brought by or against … Customer or Advertiser, the respective affiliates and parent companies of Customer or Advertiser, and the respective officers directors, employees, agents, predecessors, successors, and assigns of these entities." (*Id*. at ¶ 23.)

In April 2020, Google Asia suspended Jupiter's account after it failed to pay approximately $120 million in advertising invoices. (*Id*. at ¶ 32; Dkt. No. 32 at 17.) A little over a year later, Google Asia applied ex parte for an asset freeze injunction against Petitioners DotC United and Avazu in their place of incorporation, the British Virgin Islands (the "BVI Court"). (Dkt. No. 1 at ¶ 35; Dkt. No. 58-3.) Jupiter is a subsidiary of Avazu and Avazu's parent DotC United. (Dkt. No. 1 at ¶ 17.) Google Asia sought the freezing order "in aid of foreign arbitration proceeding" and contended the freezing order was necessary because "[t]here is solid evidence of a real risk of dissipation of the Respondents' assets." (Dkt. No. 58-3 at 2, 16.) On June 2, 2021, the BVI Court granted Google Asia's request and entered an ex parte freezing injunction against Avazu and DotC United's assets. (Dkt. No. 58-4.)

Two days later, Google Asia filed a Notice of Arbitration with the International Centre for Dispute Resolution (ICDR) against Jupiter, Avazu, DotC Pte. Ltd., and DotC United. (Dkt. No. 63-16.) Avazu, DotC Pte. Ltd., and DotC United—the non-signatories to the arbitration agreement—notified ICDR they objected to ICDR's authority to arbitrate any of Google Asia's claims against them. (Dkt. No. 58-5.) Avazu and DotC United simultaneously filed a discharge action with the BVI Court likewise arguing ICDR lacked jurisdiction over them as non-signatories. (Dkt. No. 63-13.)

2

1   On July 15, 2021, the IDCR notified Petitioners it had determined it had "administrative
2   jurisdiction to proceed with the administration of this case." (Dkt. No. 58-6.) The ICDR then
3   invoiced the parties for services, apportioning the costs in thirds between Petitioners, Jupiter, and
4   Google Asia. (Dkt. No. 58-8.) A month later, Google Asia submitted an opposition to Petitioners'
5   BVI Court discharge application, arguing, among other things, it had a "good arguable case that
6   the arbitrators have the power to rule on their jurisdiction over the BV Respondents in the first
7   instance" because "signatory parties are not required to first seek a court order compelling non-
8   signatories to arbitrate in order for the arbitration to go forward." (Dkt. No. 58-9 at ¶ 36.) Two
9   months later, the BVI Court denied Petitioners' discharge request and issued a continuation of the
10  freeze order pending the arbitration proceedings. (Dkt. No. 58-10.)

11  Petitioners continued to contest the ICDR panel's jurisdiction to bind them to arbitrate.
12  (Dkt. No. 63-19 at ¶¶ 42-46.) The ICDR panel bifurcated the arbitration into two phases: (1)
13  jurisdiction over Petitioners, and (2) the merits of Google Asia's claims. At phase one, in a 2-1
14  decision, the panel denied Petitioners' request to dismiss the arbitration and held Petitioners are
15  bound to arbitrate Google Asia's claims against them. Petitioners had argued that apart from the
16  ICDR panel's lack of jurisdiction, it should not decide the jurisdictional question because it would
17  be unduly burdensome to require non-signatories to participate in the full arbitration before the
18  jurisdictional question could be reviewed. In response, the panel held:

> A finding by an arbitrator that he or she has jurisdiction over a non-party is a final determination of a substantive legal right put at issue by the parties. As such, the decision is not only an award, it is a final award with respect to that issue, ***providing for immediate recourse should a party so wish.***

22  (Dkt. No. 1-4 at 6 (emphasis added).)
23  Three months after the panel's decision, Petitioners sought the "immediate recourse" to
24  which the panel referred, by filing a Petition and accompanying motion in this Court to vacate the
25  panel's jurisdictional decision. (Dkt. No. 1.) The parties stipulated to extend the time for Google
26  Asia to respond and this Court ordered the parties to stipulate to a briefing schedule on the motion
27  to vacate. (Dkt. Nos. 7, 18.) The parties' subsequent stipulation noted Google Asia's anticipated
28  Cross-Petition to confirm the jurisdictional arbitration decision, "the complex issues implicated by

3

both motions," and agreed to a schedule with a hearing on January 12, 2023 at the earliest. (Dkt. No. 26.) The Court set the hearing for January 19, 2023.

Before the Court heard the petitions, it asked for supplemental briefing on the finality of the ICDR panel's decision for review purposes. (Dkt. No. 45.) Google Asia responded: "there is authority that when an award disposes of a separate and independent claim, particularly where the parties and the arbitrators agreed to bifurcate the arbitration into phases, the award can be considered final." (Dkt. No. 47.) And Google urged the Court to consider the jurisdiction decision final and thus resolve the pending motions. (*Id.*) The Court held oral argument on January 19, 2023 as scheduled. At the hearing, the Court asked for supplemental briefing to address:

> (a) whether the Court should vacate the underlying arbitration award on the grounds that the arbitration agreement did not delegate the question of arbitrability to the arbitrators; and
>
> (b) to the extent the Court conducts an "independent review" of the arbitration award, whether the Court should give any deference to the factual findings of the arbitration panel and what procedures the Court should use in conducting that review.

(Dkt. No. 55 at 2.) The parties agreed to a briefing schedule which had the continued motion being heard on April 13, 2023, which the Court moved to April 19, 2023. (*Id.*)

The ICDR panel's merits hearing, the second part of the bifurcated proceeding, is scheduled to commence May 9, 2023. (Dkt. No. 58-2 at ¶ 16.) Google has refused to stay the merits proceeding, and the ICDR panel refused Petitioners' stay request. So, Petitioners moved for a preliminary injunction to stay further arbitration proceedings pending this Court's determination of whether the panel had jurisdiction to require Petitioners to arbitrate.

## JURISDICTION

Petitioners contend this Court has original jurisdiction under 9 U.S.C. § 203 because this is a civil action concerning an arbitration falling under the Convention on the Enforcement and Recognition of Foreign Arbitral Awards ("New York Convention"). (Dkt. No. 1 at ¶ 13.) Respondent does not contest the Court's jurisdiction. The Court nonetheless has an "independent obligation" to determine whether subject matter jurisdiction exists. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004).

4

1  To fall under the New York Convention, "the award [or arbitration agreement] (1) must
2  arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely
3  domestic in scope." *Ministry of Def. of Islamic Republic of Iran v. Gould Inc*., 887 F.2d 1357,
4  1362 (9th Cir. 1989); *see also LaPine v. Kyocera Corp*., No. C 07-06132 MHP, 2008 WL
5  2168914, at *3 (N.D. Cal. May 23, 2008) ("An arbitration agreement or arbitral award 'falls
6  under' the Convention if it 'aris[es] out of a legal relationship, whether contractual or not, which is
7  considered as commercial,' provided that if the relationship is entirely between U.S. citizens, it
8  must involve property or performance abroad or have some other reasonable relation with a
9  foreign country." (quoting 9 U.S.C. § 202)).
10  While "[t]he Ninth Circuit has yet to determine whether a court has jurisdiction over a
11  petition to enjoin arbitration under the New York Convention," "several district courts have
12  concluded that a court has subject matter jurisdiction under 9 U.S.C. § 203 to determine whether it
13  can enjoin or stay an arbitration proceeding that falls under the New York Convention." *Wang v.
14  Kahn*, No. 20-CV-08033-LHK, 2022 WL 36105, at *8 (N.D. Cal. Jan. 4, 2022) (collecting cases).
15  "[T]he question of remedy is distinct from the Court's subject matter jurisdiction under the New
16  York Convention." *Id*. at *10; *see also Al-Qarqani v. Chevron Corp*., 8 F.4th 1018, 1025 (9th Cir.
17  2021) ("so long as a party makes a non-frivolous claim that an arbitral award is covered by the
18  Convention, the court must assume subject matter jurisdiction and hear the merits of the case. If
19  the court concludes that the award is not covered, the appropriate disposition is to deny
20  enforcement, not to dismiss the petition for lack of subject-matter jurisdiction.") (cleaned up).
21  Because this Court has jurisdiction under the New York Convention, it has jurisdiction to
22  provide the relief sought here—namely, a stay of arbitration proceeding as to Petitioners.

**DISCUSSION**

24  "On a motion for a preliminary injunction, plaintiffs must make a 'threshold showing' of
25  four factors." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 844-845 (9th Cir. 2020) (internal
26  citation omitted). "Plaintiffs must show that (1) they are likely to succeed on the merits, (2) they
27  are likely to 'suffer irreparable harm' without relief, (3) the balance of equities tips in their favor,
28  and (4) an injunction is in the public interest." *Id*. (citing *Winter v. Nat. Res. Def. Council, Inc*.,

5

555 U.S. 7, 20 (2008)). "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

### A. Likelihood of Success/Serious Legal Issue

To satisfy the first factor, the movant must make "a strong showing that [the petitioner] is likely to succeed on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (cleaned up). This means that, "at a minimum, [the petitioner] must show that [there is] a 'substantial case for relief on the merits." *Id.* However, the standard does not require the petitioners to show "it is more likely than not that they will win on the merits.'" *Id.* Petitioners insist they have demonstrated a likelihood of success or at least serious legal issues; in particular, they maintain the ICDR panel lacked jurisdiction to decide Petitioners are bound by the arbitration agreement.

Gateway questions of arbitrability, such as whether parties are bound by an arbitration clause, "are presumptively reserved for the court." *Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). "However, parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *Id.*; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy through a delegation clause."); *First Options of Chicago, Inc.*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (cleaned up).

Here, the parties *agree* the arbitration agreement does *not* contain clear and unmistakable language delegating to the arbitrators the question of whether Petitioners are bound by the arbitration agreement. (Dkt. No. 56 at 4.) Thus, even if Petitioners were signatories, the question of arbitrability is a question for the courts—not arbitration. The ICDR panel did not find

6

1  otherwise; instead, it concluded it could still decide whether Petitioners are bound by the
2  arbitration clause subject to *de novo* review.  It did not matter Petitioners had *not* agreed to submit
3  arbitrability to the arbitrators and that they had moved to dismiss the arbitration on that very
4  ground. The ICDR panel reasoned in effect that even if a court would not have compelled
5  arbitration of the arbitrability question, it could still deny the request to dismiss the arbitrability
6  arbitration proceedings because a court could later decide the arbitrability question anew. (Dkt.
7  No. 1-4 at 5.)   The dissent recited that under binding United States Supreme Court law, a court,
8  and not an arbitration panel, must decide whether Petitioners are bound by the arbitration
9  agreement and so the ICDR panel should have granted Petitioners' request to dismiss the
10 arbitration.  (Dkt. No. 1-5.)

11 Petitioners have met their preliminary injunction burden. They have shown it is likely they
12 will prevail on their claim the ICDR panel should have granted their request to dismiss the
13 arbitration as to them as a court must answer that question independently, "just as it would decide
14 any other question that the parties did not submit to arbitration." *First Options*, 514 U.S. at 943.
15 Indeed, Google Asia agrees this Court must decide arbitrability independently.  But, Google Asia
16 appears to argue that because a court can review the jurisdictional decision independently *after* the
17 entire arbitration is complete, this Court cannot review it now.

18 Google's argument makes little sense, violates Federal Rules of Civil Procedure 1, and is
19 inconsistent with the Supreme Court's command that arbitration is a matter of contract.  *See*
20 *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1923 (2022) ("arbitration is a matter of
21 consent"; "a party can be forced to arbitrate only those issues it specifically has agreed to submit
22 to arbitration" (cleaned up)).  Petitioners appeared at the arbitration and requested it be dismissed
23 because they had not agreed to arbitrate, including arbitrate arbitrability.  By defending the ICDR
24 panel's decision to decide arbitrability (indeed, urging it to do so), Google is suggesting arbitrators
25 are not bound by *First Options* or *Rent-a-Center* because a court can later independently review
26 the entire decision, including the arbitrators' jurisdiction to decide arbitrability.

27 While a party may agree to have the jurisdictional question reviewed at the very end of the
28 arbitration, that is not what happened here. Petitioners appeared and requested the panel dismiss

1   the arbitration as to them. The ICDR panel denied the dismissal request.  But in doing so, it
2   specifically held its jurisdictional decision was a "final" award "providing for immediate recourse
3   should a party so wish." (Dkt. No. 1-4 at 6.)  Petitioners sought that "immediate recourse" by
4   filing an action in this Court to vacate the arbitration panel's decision. In *First Options*, the
5   Supreme Court expressly recognized a party can get an independent court decision on the question
6   of arbitrability before having to arbitrate the merits "by trying to enjoin the arbitration." *First
7   Options*, 514 U.S. at 946; *see also Nat'l Ass'n of Broad. Emps. & Technicians v. Am. Broad. Co.*,
8   140 F.3d 459, 462 (2d Cir. 1998) (holding that if the party opposing arbitration desires a court to
9   first decide the arbitrability question "it can ask a court to enjoin arbitration on the ground that the
10  underlying dispute is not arbitrable"); *Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales,
11  LLC*, 514 F. App'x 365, 370 (4th Cir. 2013) (same).  This is precisely the relief Petitioners seek.

12        To the extent Google Asia argues Petitioners have waived their right to enjoin the
13  arbitration because they participated in the phase one arbitrability proceedings, the Court is
14  unpersuaded.  Petitioners participated by moving to dismiss the arbitration on the grounds
15  arbitrability was a question for a court.  Google Asia cites no case that suggests Petitioners' only
16  option was to refuse to participate at all.  Further, the arbitration panel told Petitioners they could
17  seek immediate recourse and Google Asia argued to this Court that it was final and reviewable
18  now.  Thus, if it is too late for anything, it is too late for Google Asia to argue this Court cannot
19  review the "final" jurisdictional award until the entire arbitration is complete.

20        Finally, Google Asia's suggestion that its interpretation is most consistent with pro-
21  arbitration policies is unavailing.  "[T]the basic objective in this area is not to resolve disputes in
22  the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial
23  arbitration agreements, like other contracts, are enforced according to their terms, and according to
24  the intentions of the parties." *First Options*, 514 U.S. at 947 (1995) (cleaned up); s*ee also Granite
25  Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010) ("We have applied the presumption
26  favoring arbitration, in FAA and in labor cases, only where it reflects, and derives its legitimacy
27  from, a judicial conclusion that arbitration of a particular dispute is what the parties intended
28  because their express agreement to arbitrate was validly formed and (absent a provision clearly

8

and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute.").

### B. Irreparable Harm

To satisfy the second factor for a stay pending appeal, the movant must show "that irreparable harm is probable if the stay is not granted." *Leiva-Perez*, 640 F.3d at 968. "Simply showing some possibility of irreparable injury" is insufficient. *Nken v. Holder*, 556 U.S. 418, 434 - 35 (2009).

Petitioners insist (1) being required to arbitrate a dispute that they did not agree to arbitrate is per se irreparable harm, and (2) if they are required to arbitrate, they will incur fees and expenses they may never be able to recover. Google Asia counters that Petitioners' delay in raising these issues and their participation in the underlying proceedings undermines any claim of irreparable harm.

Generally, "[a] delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984); *see also Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."). Google Asia maintains that if the harm was real, Petitioners would have immediately moved to stay the arbitration.

Petitioners counter they had valid reasons for waiting to challenge the ICDR panel's authority; namely, the BVI freeze order. They maintain they sought relief "from the panel because that route could have resulted in the least potential harm: if the arbitration panel had…dismissed Petitioners from the case, the freezing order would have been dissolved, and Petitioners could have simple disregarded the arbitration." (Dkt. No. 64 at 13.) That is, because the BVI freeze order is tied to the arbitration proceedings, had Petitioners failed to appear in the arbitration proceedings their default could have resulted in the loss of their assets. (Dkt. Nos. 58-4; 58-10.) However, Petitioners objected to the ICDR panel's jurisdiction over them at every juncture. (Dkt. Nos. 58-5; 58-12; 58-13.) *Sarl v. A.M. Todd Co.*, is therefore inapposite. 2009 WL 2526432, at *5 (E.D. Pa. Aug. 18, 2009) (refusing to stay arbitration proceedings where the party contesting

jurisdiction had previously declined to have the court resolve the arbitrability issue).

Turning to the merits of Petitioners' irreparable injury argument, Petitioners urge that being forced to continue to arbitrate a dispute based on an arbitral entity's order which it had no authority to issue is per se irreparable injury. While the Ninth Circuit has not addressed this issue, "[s]everal Circuits have held that a party is irreparably harmed by incurring costs arbitrating a dispute that the court has concluded is non-arbitrable."[2] *Pension Plan for Pension Tr. Fund for Operating Engineers v. Weldway Const., Inc*., 920 F. Supp. 2d 1034, 1049 (N.D. Cal. 2013) (collecting cases); *see also id*. at 1044-1049; *see also Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759, 766 (N.D. Cal. 2008) (granting preliminary injunction finding that "Plaintiff has no adequate remedy at law to recover the monetary and human capital it would expend defending itself in arbitration.").[3] And, as explained above, the Supreme Court has expressly acknowledged a party can avoid having an arbitrator decide arbitrability when the party has not agreed to do so by moving to enjoin the arbitration. *First Options,* 514 U.S. at 946. While the procedural posture here is somewhat different from the above cases because Petitioners have already endured arbitration on arbitrability without agreeing they are bound to do so, the Court finds there is still sufficient irreparable harm with proceeding with the remainder of the arbitration until the Court determines whether Petitioners are bound to arbitrate at all.

Google Asia's reliance on *Postmates* is unavailing as there was no dispute there as to whether the petitioners' claims were arbitrable. *Adams v. Postmates, Inc*., No. 19-3042 SBA, 2020 WL 1066980, at *5 (N.D. Cal. Mar. 5, 2020) ("Postmates agrees that Petitioners' misclassification claims are arbitrable but that Petitioners should be required to refile their demands with more specific information."). Likewise, the Ninth Circuit's statement in *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990), that "[t]he district court's principal error lies in its assumption that unnecessarily undergoing arbitration

---

[2] The Ninth Circuit has stated in dicta that a party was "entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate." *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Loc*. 63, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988).

[3]

10

1 proceedings constitutes irreparable injury" did not arise in the context of a dispute regarding
2 arbitrability.

3     Petitioners have satisfied their irreparable harm burden.

### C. Balance of the Equities

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. "In assessing whether the plaintiffs have met this burden, the district court has a duty to balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (cleaned up).

As discussed above, denial of the preliminary injunction would irreparably harm Petitioners. While Google Asia insists the balance of hardships tips in its favor because Petitioners' assets may dissipate, Google Asia has not offered evidence which supports this argument. Rather, it relies upon documents that pre-date the BVI freeze order. (Dkt. Nos. 63-39-63-41.) It also relies on a document indicating that Avazu has been listed as "In Penalty" with the BVI Financial Services Commission since August 25, 2022, because it did not pay its fees. (Dkt. No. 63-43.) But Avazu has been subject to the freeze order since June 2, 2021. (Dkt. No. 58-4.) Further, Google Asia does not explain why the freeze order is not sufficient to protect against asset dissolution or why it has not raised these issues with the BVI court if it believed the order was inadequate. Finally, as explained at oral argument, as a condition of the preliminary injunction, the Court will make the freeze order an order of this Court. Google Asia has not shown harm from briefly delaying the arbitration as to Petitioners while this Court considers the issues the parties—including Google Asia—have asked the Court to decide.

In sum, the balance of equities tips in Petitioners' favor.

### D. Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *See Stormans*, 586 F.3d at 1138-39. The Court agrees with the parties that the public interest is at most a neutral factor.

11

**CONCLUSION**

In sum, the Court finds Petitioners have demonstrated a likelihood of success on the merits or at least that serious legal questions exist regarding the ICDR panel's jurisdiction to bind them as non-signatories to an arbitration agreement without a delegation clause. The Court also finds that being required to continue to participate in the arbitration proceedings while this Court resolves the competing Petitions constitutes an irreparable injury such that a stay of arbitration proceedings as to Petitioners is warranted. Accordingly, Petitioners' motion for a preliminary injunction is GRANTED and the ICDR arbitration as to Petitioners is STAYED pending further order of this Court. The Court expressly incorporates, and makes a part of this Order, the BVI freeze order and continuation of the order.

This Order disposes of Docket No. 58.

**IT IS SO ORDERED.**

Dated: April 7, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge