UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOTC UNITED, INC., et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>GOOGLE ASIA PACIFIC PTE. LTD.,<br><br>   Defendant. | Case No.  22-cv-04990-JSC<br><br>**ORDER FOLLOWING APRIL 19, 2023 HEARING**<br><br>Re: Dkt. Nos. 6, 32 |

Petitioners, DotC United, Inc., and Avazu Inc., challenge an order from an international arbitration panel finding it had jurisdiction over Petitioners, non-signatories to the underlying arbitration agreement. Petitioners move under the Federal Arbitration Act (FAA) to vacate the arbitration panel's order finding jurisdiction and Respondent Google Asia cross-moves to confirm the order. (Dkt. Nos. 6, 32.) At the initial hearing on the cross-petitions, the Court requested supplemental briefing regarding the scope of the Court's review in light of the absence of a delegation clause and the Supreme Court's directive that courts conduct "independent review" of the arbitrability question, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). (Dkt. No. 55.) On April 19, 2023, the Court heard further argument regarding the cross-petitions and supplemental briefing. Having considered the parties' arguments and the legal authority, this Order confirms the matters discussed at the hearing and the Court's rulings on certain preliminary matters.

**DISCUSSION**

**A. Standard of Review**

The parties agree that the standard of review under *First Options* is "independent," but they disagree as to what that means. Google Asia contends it means clear error for facts and de novo for questions of law whereas Petitioners maintain the standard is de novo for everything.

(Dkt. Nos. 60, 66, 70.)

Where, as here, "the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original). Independent review is just that—independent and without deference to the arbitrators' findings. *See Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995) ("neither this Court nor the district court is bound by the arbitrators' determination that Mr. Kaplan was the alter ego of MKI. He is entitled to an independent judicial determination of that issue."). So, the arbitrators' findings are not reviewed for clear error. To so hold would violate the Supreme Court's command that the trial court decide arbitrability independently. Clear error is not independent review; instead, it is having "a serious thumb on the scale for the [factfinder]." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018); *see also* Fed. R. Civ. P. 52(a)(6) (defining the "clearly erroneous" standard as giving "due regard to the trial court's opportunity to judge the witnesses' credibility").

### B. Choice-of-Law

The law governing whether Petitioners are bound by the arbitration agreement is federal substantive law. "In cases involving the New York Convention, in determining the arbitrability of federal claims by or against non-signatories to an arbitration agreement, [courts] apply federal substantive law, for which we look to ordinary contract and agency principles." *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168 (9th Cir. 2021) (cleaned up). This is because "[t]he New York Convention and its implementing legislation emphasize the need for uniformity in the application of international arbitration agreements." *Id*. at 1168.

Petitioners' insistence *Setty* is distinguishable because the underlying claims involved federal trademark claims whereas the underlying claims here are essentially state law breach of contract claims is unpersuasive. First, the Ninth Circuit's determination that federal substantive law applied in *Setty* was not based on the federal nature of the underlying claims, but on the "need for uniformity in the application of international arbitration agreements." *Setty*, 3 F.4th at 1168. *Setty* emphasized the

2

Seventh Circuit Court of Appeal's statement in *Certain Underwriters at Lloyd's v. Argonaut Ins. Co.*, that "'[t]he Supreme Court has recognized that in the context of the New York Convention, uniformity of the law is of paramount importance' and concluding application of state-specific law would undermine this purpose." *Setty*, 3 F.4th at 1168 (quoting *Certain Underwriters at Lloyd's v. Argonaut Ins. Co.*, 500 F.3d 571, 580–81 (7th Cir. 2007) (emphasis in original"). *Setty* likewise noted that its conclusion was consistent with decisions from the First, Second, and Fourth Circuits. *Setty*, 3 F.4th at 1168, n.1 (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (explaining that when the court exercises jurisdiction under Chapter Two of the FAA, it has "compelling reasons to apply federal law, which is already well developed, to the question of whether an agreement to arbitrate is enforceable" and that to conclude otherwise would "introduce a degree of parochialism and uncertainty into international arbitration" and undermine the FAA's goal of simplicity and uniformity.); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 413–14 (4th Cir. 2000) (recognizing the FAA and the New York Convention "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act" and looking to the "federal substantive law of arbitrability" to determine whether a non-signatory was bound by the contract)). Further, none of the cases upon which *Setty* relied involved federal claims. *See, e.g.*, *Anlagen GMBH*, 206 F.3d at 414 (state law breach of contract claims); *Argonaut Ins. Co.*, 500 F.3d at 572 (insurance coverage dispute); *Grina*, 344 F.3d at 140 (state law tort and misrepresentation claims); *Smith/Enron Cogeneration*, 198 F.3d at 91 (fraudulent inducement and tortious interference claims).

Equally telling, the cases Petitioners rely upon for the proposition that the Court should follow the Restatement (Second) of Conflict of Laws did not involve the New York Convention. *See e.g., Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991) (holding the Restatement (Second) of Conflict of Laws applied when jurisdiction based on Foreign Sovereign Immunities Act (FSIA)); *Bassidji v. Goe*, 413 F.3d 928, 933 (9th Cir. 2005) (holding that because "federal subject-matter jurisdiction in this case is based on the parties' diversity of citizenship" "the choice-of-law principles of the forum state" apply); *Chuidian v. Philippine Nat. Bank*, 976 F.2d 561, 564 (9th Cir. 1992) (holding the Restatement (Second) of Conflict of Laws applied when jurisdiction

3

based on FSIA); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (holding that the Restatement (Second) of Conflict of Laws applied where jurisdiction based on U.S.C. § 632); *Chan v. Soc'y Expeditions, Inc*., 123 F.3d 1287, 1296 (9th Cir. 1997) (holding "federal courts sitting in admiralty apply federal maritime choice-of-law principles" which follow the approach of the Restatement (Second) of Conflicts of Laws).

Petitioners' suggestion at oral argument that the Supreme Court's decision in *Cassirer v. Thyssen-Bornemisza Collection Found*., 142 S.Ct. 1502 (2022), undermines *Setty* is unavailing. *Cassirer*, like the other cases upon which Petitioners rely, is not a New York Convention case, but is instead, yet another case under FSIA. In *Cassirer*, the Court held that FSIA itself dictates the choice-of-law rule: FISA provides that if a foreign state is ineligible for immunity, it must answer for its conduct just as any other actor would. *Id*. at 1507 (citing 28 U.S.C. § 1606). The Court thus held that because the defendant was not entitled to immunity, California's choice-of-law rule governed "because that is the rule a court would use in comparable private litigation." *Id*. at 1508. The New York Convention does not include a similar provision. Instead, cases applying the Convention emphasize the need for uniformity recognizing "a specific objective of federal law, namely, to ensure uniform enforcement of agreements to arbitrate" and reasoning that "[w]ere we to conclude that state law provided the applicable rule of decision [], we would sanction an interpretation of the contract that permitted, necessarily, non-uniform results." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co*., 500 F.3d 571, 580 (7th Cir. 2007).

The other cases Petitioners noted at oral argument are likewise inapposite. In *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637 (2020), the Supreme Court explicitly left the choice-of-law question unresolved. *Id*. at 1648 (stating the question of "which body of law governs th[e] determination [of whether GE Energy could enforce the arbitration clauses under principles of equitable estoppel] can be addressed on remand"). Moreover, *GE Energy* was decided before *Setty*; this district court is bound by *Setty*. *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc*., 54 F.4th 1078, 1089 (9th Cir. 2022), which the Court does not consider as it was not cited in Petitioners' briefs, *see* N.D. Civ. L.R. 7-3(d), would not change the analysis. It is not a New York Convention case, or even an arbitration case. Further, its reasoning—

4

"[w]here, as here, state law supplies the substantive rule of decision, there is *no federal interest* in supplanting the otherwise applicable choice-of-law rule," *id*. at 1089 (cleaned up)—does not apply given the stated federal interest in uniformity in New York Convention cases. *See Setty*, 3 F.4th at 1168 Petitioners have yet to cite—and the Court is not aware—of a New York Convention case that does not apply federal substantive law to the question of arbitrability.

In sum, the Court finds federal substantive law governs the arbitrability question in this action brought under the New York Convention given "the need for uniformity in the application of international arbitration agreements." *Setty*, 3 F.4th at 1168.

### C. Questions for Review

In reaching an independent decision as to whether Petitioners are required to arbitrate, the Court must resolve two issues: (1) did Jupiter agree to arbitrate disputes with Google Asia, and, if so, (2) are Petitioners bound by the arbitration agreement through the federal common law principles of alter ego, equitable estoppel, or agency. While the first question would be a question for a jury, because Petitioners did not request a jury (*see* Dkt. No. 1), the Court will decide both questions in the first instance. *See Hansen v. LMB Mortg. Servs., Inc*., 1 F.4th 667, 670 (9th Cir. 2021) ("the district court may decide the case in a bench trial if the party opposing arbitration does not demand a jury trial") (citing 9 U.S.C. § 4); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc*., 890 F.2d 165, 170 (9th Cir. 1989) ("The seventh amendment preserves the right to trial by jury of all legal claims," but there is "no right to a jury" for equitable claims).

The Federal Rules of Evidence will govern this determination. Google Asia's argument to the contrary based on *U.S. Life Ins. Co. v. Superior Nat. Ins. Co*., 591 F.3d 1167 (9th Cir. 2010), is unavailing. There, the court noted that "in order to provide a relatively expeditious and inexpensive dispute resolution, arbitration is not governed by the federal courts' strict procedural and evidentiary requirements." *Id*. at 1173. Thus, the court was "mindful not to impose the federal courts' procedural and evidentiary requirements *on the arbitration proceeding*." *Id*. (emphasis added). The question here is not whether to apply the Federal Rules of Evidence to the arbitration proceedings, but the Court's determination of arbitrability. This determination—as in any motion to compel arbitration—is governed by the Federal Rules of Evidence.

**D. Next Steps**

Neither party contends that it is entitled to summary judgment. As such, the Court will proceed to make findings of fact and draw conclusions of law pursuant to Federal Rule of Civil Procedure 52 to finally resolve the arbitrability question. As discussed at the hearing, the parties shall meet and confer regarding the next steps including (1) what facts the parties are willing to stipulate to; (2) what discovery if any is necessary, and the process and timing for any discovery; (3) the form and timing of the parties' pre-hearing submissions; and (4) the form and timing of the Rule 52 hearing.

The Court will hold a further Status Conference via Zoom video on May 9, 2023 at 1:30 p.m. A joint statement with an update regarding the parties' meet and confer and their joint or separate proposals regarding the next procedural steps is due May 5, 2023.

**IT IS SO ORDERED.**

Dated: May 1, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge